IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURENCE EDWIN ASHFORD,<br><br>                        Petitioner,<br><br>            vs.<br><br>JEFFREY BEARD, Secretary, California Department of Corrections and Rehabilitation,[1]<br><br>                        Respondent. | No. 2:11-cv-01423-JKS<br><br>MEMORANDUM DECISION |

       Laurence Edwin Ashford, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  At the time he filed his Petition, Ashford was in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Eel River Conservation Camp.  It appears that he has been released on supervised parole, as a search on the California Department of Corrections and Rehabilitation's inmate locator website (http://inmatelocator.cdcr.ca.gov/, Inmate No. G17175) has no record of him.  Respondent has answered, and Ashford has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

       On March 12, 2008, Ashford was charged with assault with a firearm with an enhancement for personal use of a firearm (count 1); making a criminal threat (count 2); first degree residential burglary (count 3); attempted kidnapping (count 4); discharging a firearm in a grossly negligent manner (count 5); and inflicting corporal injury on his spouse (count 6).  On

---

[1]      Because it appears that Ashford has been released but is on post-release supervision, Jeffrey Beard, Secretary, California Department of Corrections and Rehabilitation, is substituted for Ron Barnes, former Warden, California Correctional Center.  FED. R. CIV. P. 25(c).

direct appeal of his conviction, the California Court of Appeal recounted the following facts underlying the indictment:

> The prosecution case:
>
> [Ashford's] wife claimed that she had been separated from [Ashford] since 2004. They had two children, ages 5 (a daughter) and 11 (a son), at the time of the 2008 trial.
> In July 2006 [Ashford's] wife was at home with a male friend in midafternoon. The children were with their aunt. She saw her friend to the front door; he was holding a bag with a birthday gift from her inside it. [Ashford] suddenly approached the front door. She closed and locked it, leaving her friend outside.[FN1] Through the peephole, she could see that [Ashford] was armed. She could hear [Ashford's] voice, sounding angry, through the door (although she could not make out any words). She ran to the bedroom phone and immediately called 911.
>
> > FN1. She was worried that [Ashford] had come in person to continue their telephone quarrel of the previous day.
>
> Left outside with [Ashford], whom he had never met before, the friend asked his identity. Appearing very angry, [Ashford] said this was his house and his wife. Asking the friend if he thought [Ashford] was "playing around," [Ashford] pulled two guns out of a long leather coat that looked far too warm for the July day. He pointed both of them at the friend. The friend thought that he was about to die. [Ashford] then pointed one of the guns at the dirt about 10 feet away from the friend and fired it. [Ashford] grabbed the bag with the birthday gift and threw it to the ground. [Ashford] led the friend at gunpoint back to the latter's car, and told him he wanted the friend to get the wife to open her door; the friend demurred. This angered [Ashford], who stormed over to the front door and began to kick it, shouting at his wife.
> When she heard the gunshot, the wife came back to the front door to look again through the peephole. [Ashford] was now attempting to kick in the door, shouting at her. She ran to the bathroom, locked the door, and hid in the tub.
> After [Ashford] kicked the front door open, the friend ran up behind [Ashford] and struck him. Following a slight scuffle, [Ashford] again pointed the guns at him, so the friend fled.
> [Ashford] began to kick at the bathroom door. When it flew open, he pulled his wife out of the tub, struck her on the head, and threw her against the toilet.[FN2] The toilet broke, scratching her leg. She also had bruising.
>
> > FN2. According to the 911 transcript, [Ashford's] wife was telling him that "it's not what you think."
>
> [Ashford] dragged his wife out of the house and demanded that she get in and drive his car. When the sound of police sirens began to approach them, he told her to get

2

back in the house. As [Ashford] walked into the garage, his wife took the opportunity to flee from the house to a neighbor across the street, where her friend was waiting for her.

The defense case:

[Ashford] testified. He denied being separated from his wife. She had moved to the Sacramento home from their house in Oakley because of a job transfer. He planned to join her.[FN3] They had put the Oakley house up for sale.

> FN3. In his statement to a deputy, [Ashford] had admitted being separated, with neither spouse having a key to the other's home.

Based on a conversation with his son about the source of his new tennis shoes ("mommy's friend"), [Ashford] began to suspect that his wife was having an affair. In June 2006 he got a call from his wife at work in which she reported that their son had touched his sister inappropriately. When he questioned his son about the incident, [Ashford] suspected this might be a sign that someone else had been molesting his son. When he asked his son if anyone had touched him inappropriately, the son said "mommy's friend." The son would not supply a name. When his wife arrived and he told her this, she called their son a liar.

On the day before his confrontation with his wife and her friend, he had taken along some guns in his pocket for an outing to some rural property that his family owned. He spoke to his wife over the phone; when he asked her about hearing someone in the background, she hung up. He was not able to reach her after that. He went to the Sacramento home and waited. She did not return that night. Eventually, he went back to the Oakley house to freshen up, and then came back.

When he arrived, he saw a Corvette in the driveway. He thought this might be the "fast car" to which his son had made references. He saw his wife and her friend kissing at the front door.

He put on his coat and approached them, forgetting that the guns were still in the pockets from the previous day. After his wife slammed the door, [Ashford] began confronting her friend about her marital status. The friend approached him. [Ashford] pulled out a gun, and it accidentally fired. He put the gun immediately back in his pocket. Standing near the friend's car, [Ashford] tried unsuccessfully to persuade him to leave. When the friend started to approach him again, [Ashford] again pulled out the gun and expelled a round so that it could not fire. This stopped the friend's approach, so [Ashford] turned his focus to the front door. After he had kicked in both doors and found his wife in the bathroom, he simply helped her out of the tub without striking her or throwing her around the room. His wife walked out of the front door on her own accord to the car. She asked [Ashford] to go back in the house to get her shoes if he wanted her to drive. When he came back outside, the police had arrived and subsequently arrested him.

*People v. Ashford*, No. C058950, 2009 WL 1601231, at *1-2 (Cal. Ct. App. June 9, 2009).

3

Following trial, the jury found Ashford guilty of assault with a firearm and negligent discharge of a firearm (counts 1 and 5) and found true the personal use of a firearm allegation. The jury found Ashford not guilty of making a criminal threat (count 2) and burglary (count 3). As to count 4, the jury found Ashford not guilty of attempted kidnapping but guilty of misdemeanor false imprisonment. On count 6, the jury found Ashford not guilty of felony spousal abuse but guilty of the lesser included offense of battery against a spouse.

On May 16, 2008, the court sentenced Ashford to two years' imprisonment for assault with a deadly weapon plus three years' imprisonment for the firearm enhancement as well as a concurrent two-year term for negligent discharge of a firearm for an aggregate sentence of five years in state prison. The court sentenced Ashford to time served on the two misdemeanor counts.

Through counsel, Ashford appealed his conviction, arguing that: 1) the prosecutor committed misconduct during his closing argument; 2) the misdemeanor false imprisonment conviction violated his right to due process because it was not a lesser included offense of attempted kidnapping; and 3) the trial court erred by failing to stay his sentence on the conviction for negligently discharging a firearm. *Ashford*, 2009 WL 1601231, at *1. The Court of Appeal corrected the abstract of judgment to reflect that the sentence imposed on the conviction for negligently discharging a firearm was stayed but otherwise affirmed Ashford's conviction in a reasoned, unpublished decision. *Id.* at *5. Ashford then petitioned for review in the California Supreme Court, raising only his claim that the prosecutor committed misconduct in summation "by denigrating the institutional role of defense counsel and referring to facts not in evidence." The state supreme court summarily denied the petition on August 12, 2009.

4

Ashford additionally filed a *pro se* petition for a writ of habeas corpus in the Sacramento County Superior Court, claiming that: 1) trial counsel was ineffective for waiving his preliminary hearing, failing to object to the jury being instructed on an offense that was not charged in the information or a lesser included offense, failing to investigate whether Ashford's son had been molested by the mother's friend, and failing to call a witness who could testify to the potential molestation; 2) the prosecutor committed misconduct in her cross-examination of a character witness who testified for the defense, in making improper comments in summation, and in connection with a Children's Protective Services (CPS) report that Ashford claims could have been used to impeach his wife's friend; 3) the trial judge was biased and, because of his experience in family court, "had a personal knowledge of the disputed evidentiary facts"; 4) at least four jurors were prejudiced against him; 5) he was the victim of malicious prosecution; and 6) the trial court erred in excluding evidence from a family court proceeding that involved his wife's friend. The court denied the motion as untimely and on the merits in an unpublished, reasoned decision.

Ashford subsequently raised the same claims in a petition for a writ of habeas corpus filed in the California Court of Appeal, which the appellate court summarily denied on February 17, 2011. Ashford petitioned the California Supreme Court for review of the denial on all grounds asserted. The state supreme court denied review without comment on May 11, 2011. Ashford timely filed the Petition for a Writ of Habeas Corpus to this Court on May 16, 2011.

## II. GROUNDS/CLAIMS

In his *pro se* Petition, Ashford asserts the six grounds for relief he raised to the state courts in his petitions for habeas relief: 1) ineffective assistance of trial counsel; 2) prosecutorial misconduct; 3) judicial bias; 4) juror bias; 5) malicious prosecution; and 6) evidentiary error.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.    Procedural Bar

Respondent argues that each and every claim raised in Ashford's Petition is procedurally barred because the state court considering these claims on habeas review found the claims barred under three separate state procedural theories: (1) not supported by reasonably available documentary evidence (*Harris/Swain*); (2) could have been but were not raised on appeal (*Dixon/Seaton*); and (3) untimely (*Robbins/Clark*).

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992). "The state-law claim may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011). Procedural default does not preclude federal habeas review unless the last state court rendering judgment in a case "clearly and expressly" states that its judgment

7

rests on a state procedural bar. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (quoting *Harris v. Reed*, 489 U.S. 255, 262-63 (1989)). "In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default." *Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted). This Court therefore must address whether the procedural grounds relied upon by the Sacramento County Superior Court on habeas review constituted adequate and independent grounds precluding federal habeas review here.

    1.    *Harris/Swain*

Citing *In re Harris*, 855 P.2d 391, 397 n.5 (Cal. 1993), and *In re Swain*, 209 P.2d 793 (Cal. 1949), the state superior court found that part of Ashford's ineffective assistance of counsel claim (claim 1), part of his prosecutorial misconduct claim (claim 2), his bias claims (claims 3 and 4), and his evidentiary error claim (claim 6) were barred because he failed to allege his claims with sufficient particularity and to support the claims with reasonably available documentary evidence. Respondent contends that this procedural bar is sufficient to bar review here.

*In re Swain* stands for the rule that a California habeas petition must state "with particularity the facts" upon which relief is sought. 209 P.2d at 796. *In re Harris* stands for the additional proposition that documentary evidence must be provided. 855 P.2d at 397 n.5 ("Such factual allegations should also be supported by '[reasonably available] documentary evidence and/or affidavits." (quoting *In re Clark*, 855 P.2d 729, 749 n.16 (Cal. 1993)). If a petition is dismissed for failure to state the facts with particularity—that is, with a cite to *Swain*—the

petitioner may file a new petition curing the defect. *See Gaston v. Palmer*, 417 F.3d 1030, 1037 (9th Cir. 2005); *see Kim v. Villalobos*, 799 F.2d 1317, 1319 (9th Cir. 1986). There is no reason the result should be any different when the defect in the state petition is the failure to attach documentary evidence. Neither the failure to attach documentary evidence nor the failure to plead with particularity are irremediable errors. It therefore appears that the California courts would have allowed Ashford to file a new state petition remedying these defects. Accordingly, the *Harris/Swain* bar did not cause these claims to be procedurally defaulted in state court and thus this bar does not cause them to be procedurally defaulted in federal court either. *See Cross v. Sisto*, 676 F.3d 1172, 1177 (9th Cir. 2012) (California state court's denial of petitioner's habeas petition with citation to *Swain* constituted dismissal without prejudice and with leave to amend to plead required facts with particularity and thus did not signify that petitioner's claims were procedurally barred as a matter of state law).

      2.      *Dixon/Seaton*

The state superior court also found part of Ashford's prosecutorial misconduct claim (claim 2), his bias claims (claims 3 and 4), his malicious prosecution claim (claim 6) and his evidentiary error claim (claim 7) barred under *In re Dixon*, 264 P.2d 513, 514 (Cal. 1953), and/or *In re Seaton*, 95 P.3d 896, 900 (Cal. 2004).

A citation to *Dixon* indicates that the state court found claims to be barred because they could have been but were not raised on direct appeal. *See Dixon*, 264 P.2d at 514 ("The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constitu[t]ing an excuse for failure to employ that remedy, the writ will not lie where the claimed error could have been, but were not, raised upon a timely appeal from a

judgment of conviction."); *see also Seaton*, 95 P.3d at 901 n.4 ("What we mean when we invoke the *Dixon* bar is that the claim is *based on the appellate record*, and thus was fully cognizable on appeal insofar as it was preserved at trial.).

The Ninth Circuit has not explicitly found that a *Dixon* default is an independent and adequate state law ground, but it has indicated that it is likely to do so with respect to the time period at issue here. *See Bennett v. Mueller*, 322 F.3d 573, 580-86 (9th Cir. 2003) (suggesting in dicta that *Dixon* rule would constitute an independent and adequate state-law ground when applied after the California Supreme Court's 1998 decision in *In re Robbins*, 959 P.2d 311 (Cal. 1998)); *see also Flores v. Roe*, 228 F. App'x 690, 691 (9th Cir. 2007)[2] (finding claim procedurally barred based on *Dixon* bar); *cf. Park v. California*, 202 F.3d 1146, 1152-53 (9th Cir. 2000) (holding that *Dixon* bar was not independent state law ground prior to *Robbins*). Some courts in this district have accordingly concluded that habeas review is foreclosed when the petitioner has failed to place the adequacy of the *Dixon* rule at issue and has not shown cause and prejudice or that a miscarriage of justice would result if the claim were not heard. *See, e.g.*, *Stribling v. Grounds*, No. 12-cv-3084, 2013 WL 5817668, at *4-5 (E.D. Cal. Oct. 29, 2013); *Cantrell v. Evans*, No. 07-cv-1440, 2010 WL 1170063, at *13-14 (E.D. Cal. Mar. 24, 2010).

It is unnecessary, however, for this Court to decide the *Dixon* procedural bar issue here because, as discussed below, the state court applied an additional procedural bar which is dispositive in this case.

---

[2] Cited for persuasive value pursuant to Ninth Circuit Rule 36-3.

3.  *Robbins/Clark*

The Superior Court's citation with respect to each claim to *In re Robbins*, 959 P.2d 311 (Cal. 1998), and *In re Clark*, 855 P.2d 729 (Cal. 1993), reflects that Ashford's state habeas petition was denied because it was deemed untimely, *Walker*, 131 S. Ct. at 1126.  The Ninth Circuit has held that California's "substantial delay" timeliness standard satisfies the "independent and adequate" requirement.  *See Bennett*, 322 F.3d at 582-83; *see also Walker*, 131 S. Ct. at 1131 (finding that California's timeliness standard is adequate).  The Ninth Circuit has further stated:

> If a petitioner has procedurally defaulted on a claim, a federal court may nonetheless consider the claim if he shows: (1) good cause for his failure to exhaust the claim; and (2) prejudice from the purported constitutional violation; or (3) demonstrates that not hearing the claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640; *Sawyer v. Whitley*, 505 U.S. 333, 339-40, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992).  An objective factor outside of a petitioner's control (*e.g.*, ineffective assistance of counsel or a basis for the claim that was previously unavailable) could constitute cause. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).  The petitioner can meet the prejudice prong if he demonstrates "that the errors . . . worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir.1989) (citing *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)).  A petitioner can demonstrate a fundamental miscarriage of justice by "establish[ing] that under the probative evidence he has a colorable claim of factual innocence." *Sawyer*, 505 U.S. at 339, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (quotation marks omitted).

*Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

Ashford does not respond in his Traverse to the timeliness bar asserted by Respondent and thus does not demonstrate cause for his procedural default.  Nor do the claims raised in his Petition establish a colorable claim of factual innocence or demonstrate that injustice would result from not hearing his claim.  Accordingly, this Court largely agrees with Respondent that

the claims asserted are procedurally defaulted and barred from federal review and those claims are thus rejected on that basis.

One contention, however, is not barred by the state court's application of the *Dixon* rule. Ashford first raised his claim that the prosecutor committed misconduct in summation on direct appeal. The Court of Appeal rejected the claim on the merits. *Ashford*, 2009 WL 1601231, at *4. That portion of claim 2 was therefore not subject to the procedural bar invoked when the Superior Court later denied habeas relief. Thus, that claim is subject to AEDPA review without consideration of the procedural bar. *See, e.g.*, *Jati v. Long*, No. SACV 12-02073, 2013 WL 5720161, at *6 (C.D. Cal. Oct. 21, 2013) (claim decided on direct appeal without invocation of a procedural bar not procedurally defaulted by later court's denial on procedural grounds). The Court therefore declines to find that claim procedurally barred and will instead review its merits as addressed below.

B.    Merits

Prosecutorial Misconduct in Closing Argument

In considering this claim on direct appeal, the California Court of Appeal recounted the following underlying facts:

> In the course of his closing argument, defense counsel urged the jury to take a reasonable view of the crimes for which [Ashford] was truly responsible as a result of his "huge mistake" that day, conceding [Ashford's] possible guilt of the misdemeanor false imprisonment of his wife (if he had come across too forcefully because of his excitement and agitation) and battery of a spouse. ". . . Laurence Ashford, as we've heard [from various character witnesses], is a reasonable, calm, peaceful guy. [H]e hit his breaking point. [N]ot unlike most people[,] when he catches his wife in an affair, when he catches them kissing, when he has information in his head that mommy's friend is molesting his son . . . , he reacted. [¶] Was his reaction a felony? No. His reaction was misconduct and he should be punished accordingly, but nobody was hurt . . . . [¶] [D]id he commit these felonies as he is accused of by the prosecution? No, that is too much . . . . It is not kidnapping, it is not assault with a deadly weapon, it is not burglary. Those aren't meant

12

for this situation . . . . [¶] He [does not have any] history of violence. [The character witnesses] all say he is peaceful, he is honest, he is calm. He is a family man and he is just trying to protect that family. He deserves the benefit of the doubt."

In rebuttal, the prosecutor responded, "I'm confused. What defense [counsel] gets up here and tells you basically [is] this whole event is because of a reaction. His client reacted. Reacted because he saw his wife with another man and acted out of character . . . . [¶] You heard from [Ashford] himself. What did he tell you? I got there, I was calm. I calmly got out of my vehicle. I calmly went to the trunk of my car. I calmly put my jacket on. I calmly went to the door. Yes, I kicked the door in. Yes, I kicked the master bath door in, but I calmly gave [my wife] my hand to help her out of the residence[. T]otally contrary to this whole [']it's a reaction,['] ladies and gentlemen. [¶] *It's a reaction to something that the defense is trying to evoke in you some type of an emotional response. And this is a common, common tactic of defense attorneys*." (Italics added.) After the court overruled the objection of defense counsel, the prosecutor continued, "Do you have some experience in your life personally that's similar to this? Do you have some family member who['s] maybe been through something like this? Do you feel like [']yeah, this is wrong. This guy went over to his ex-wife's house . . . , and she is there with another man, I don't like this. I'm going to ignore all of the evidence['] and maybe not even consciously say that to yourself, but get that feeling aroused inside of you where you are not focu[s]ing on the evidence in the case or the instructions that the Judge is going to give you. [¶] Please be careful throughout your deliberation[s]. Be careful . . . . [R]emember what the evidence was, not just what the defense attorney is saying to you that is not supported by the evidence, and do your evaluation that way as instructed."

*Ashford*, 2009 WL 1601231, at *3.

Ashford contends, as he did on direct appeal, that the comments italicized above constituted misconduct because they "referred to facts not in evidence and denigrat[ed] . . . the institutional role of the defense counsel" and "went to the very heart of [his] defense." Pet. at 5D. The appellate court disagreed, finding that "[t]he prosecution was simply emphasizing that the jury should remember to focus on the evidence and instructions, and resist an appeal to pure emotion." *Ashford*, 2009 WL 1601231, at *4. The court further noted, "Nor do we believe that the jury interpreted the remarks as [Ashford] would now characterize them, as they in fact acquitted [him] of two felony charges and returned verdicts on lesser misdemeanors on two other felony charges, much as defense counsel had invited them to do." *Id.*

13

To successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Under this standard, only egregious prosecutorial misconduct can give rise to a constitutional claim.  *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995).  A prosecutor's comments in summation constitute grounds for reversal only when the remarks caused actual prejudice.  *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (applying harmless error test to claim of prosecutorial misconduct in summation).  Moreover, a prosecutor must have "reasonable latitude" to fashion closing arguments.  *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).

Ashford's claim falls far short of meeting these standards.  The prosecutor's statement was directed at the strength of the defense on the merits and did not amount to an improper disparagement of defense counsel.  *See United States v. Ruiz,* 710 F.3d 1077, 1086 (9th Cir. 2013) (prosecution's characterization of defense's case as "smoke and mirrors" was not improper where comment was directed to strength of the case and was not an *ad hominem* attack on defense counsel) (citation omitted); *People v. Stitely*, 108 P.3d 182, 212-13 (Cal. 2005) (prosecutor's use of "colorful language" to criticize "counsel's tactical approach" was not improper where the comments were "explicitly aimed at counsel's closing argument and statement, rather than at him personally").  Accordingly, the state court's finding that any error was harmless is reasonable and thus must be upheld on habeas review.  *See Inthavong v.*

*Lamarque*, 420 F.3d 1055, 1058-59 (9th Cir. 2005). Ashford therefore cannot prevail on this prosecutorial misconduct claim.

## V. CONCLUSION AND ORDER

Ashford is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 24, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge